Mr. Morens, may it please the Court, my name is Brian Morens and I represent Richard Morens, the petitioner in this habeas corpus action. Mr. Morens raises three claims on his habeas corpus petition that his right to a fair trial was denied by the jury hearing evidence that he had been convicted of a prior felony. But you know, aren't stipulations to that effect very common? I mean, I was just thinking reading these materials, it's very common to see drug charges and gun charges joined together in a single indictment. And I gather under Wisconsin law, this was proper joinder and you're arguing that there, after the joinder, there should have been severance. Correct. So, okay, but the joinder is all right. And it seems to me that's the most routine of things to do because of the frequency with which somebody who's dealing drugs might also be a felon in possession of a firearm. That's at the federal level, but Wisconsin law is obviously not too different. So why is the utterance of the word felony in the drug trial so prejudicial that it means that there needed to be severance? That would be a huge change in practice. Well, the stipulation is common in a felon in possession case itself. But in an indictment, though, I'm postulating like this one, the joins drug charges, that's the part that you don't want the felony word mentioned. Correct. There's no way of avoiding it in the gun part, but you didn't want the drug part tainted. But wouldn't it have been worse for him if there had been no stipulation? The government could have proved up, you know, all sorts of things. Yes, that would have been worse. And we're not arguing that that should have happened. What we're arguing is that the cases should have been severed. I'm very confused as to why this very common joinder of charges in which the jury hearing the drug part is going to hear about a prior conviction of a felony. No details, you know, nothing, but just a prior conviction of a felony. If we had to say that all of those were unduly prejudicial, we would be changing criminal trial practice a lot. And we're not arguing for the court to make a blanket ruling to that effect. We're just arguing that in this case. Why is it a blank? What is it about this case that's different from all the rest of them? Well, I think, first of all, if you look at the sentence, Mr. Morins received a 15-year sentence on the drug counts. He received a 1- to 2-year sentence on the various gun counts. So the drug counts really drove this case. The gun counts were secondary, at least as far as the sentence goes. And so that does raise the risk that the gun counts are used to prejudice the jury by allowing or requiring the jury to hear about the felony conviction because that is an element of the offense. Why couldn't a reasonable lawyer representing Mr. Morins have thought that rather than belabor all of this with a long limiting instruction, it was best to just let it be, let the stipulation come in, and focus on whatever else he had to say about the drug counts? That's certainly a possible interpretation. We don't know because the circuit court did not order an evidentiary hearing. The procedure in Wisconsin is when ineffective assistance of trial counsel is raised. It's raised on appeal, usually on the direct appeal and a post-conviction motion. An evidentiary hearing is commonly held, and that kind of evidence is learned. In this case, the appellate counsel, the direct appellate counsel, did not raise ineffective assistance on that issue, and the circuit court did not order a hearing on the post-conviction motion. So we just don't have evidence that that was what was going through the trial attorney's mind. But don't we, at least in terms of federal law, which is the only thing we're worried about here, isn't there a presumption that counsel is, in fact, proceeding in an appropriate way? There is, and our focus is really on the fair trial issue. I think the fair trial issue drives the other two issues, and it's probably fair to say that if the court does not agree with the petitioner on the fair trial issue, the court will not agree with the petitioner on the other two issues. So our focus has really been on the fair trial issue and introducing a prior conviction as an element so that when the cases aren't severed, it's required that the jury hear evidence even in a case where the state concedes. It would not have been able to introduce evidence of the prior conviction if the drug count was tried separately. And the circuit court initially agreed with Mr. Morins to sever the charges. Right. Then it changed its mind when it was pointed out that the jury was going to hear about the underlying guns. Correct. Not the word felony, but that's why we're talking about this word. And it doesn't seem like either the prosecution or the circuit court belabored this in front of the jury. No, they didn't. It was not discussed. It was not argued at closing argument other than just the fact that he had been convicted of a felony, and that was an element of the gun charge. That's why I can't get away from thinking that you really, in fact, are arguing for an absolute rule that in a case for which prior conviction of a felony is not an element, that it's forbidden to mention the word felony in conjunction with a defendant, unless, I suppose, if you had some exception to the prior crimes rule or something of the sort. Well, as we said, we're not asking the court to make such a ruling. We think the court could decide this case on the facts. But how would you write an opinion that did that? I mean, if you were in our shoes, what would you put? Well, given that, Mr. Morin, that in this case, the state conceded that it would not have been able to introduce the prior conviction, I think that is somewhat limiting to this case. There certainly are cases where that prior conviction might have been admissible through other acts' evidence. But here, and that was the case in Harmon that the state cites, and actually we cite also Harmon v. McVicker, where this court held that because the state could have introduced the evidence anyway, the prior convictions didn't prejudice the defense. In this case, the state does concede that it could not have introduced that evidence. What about other kinds of things? It seems to me anytime you have joinder of two different offenses in an indictment because they all arise out of the same underlying transaction, there's likely going to be some evidence that's going to come in on count one that's a little different from the evidence that's going to come in on count two and the same thing. So that would make joinder of offenses very difficult to do. I mean, you have to join them at the beginning, but then you immediately have to sever them because of the prejudicial effect of the evidence that's not relevant to the other count. Well, that is built into the analysis, the prejudice analysis. But you're saying almost prejudice is a matter of law if there is something that the jury is going to hear that's not relevant to hear the drug count. If there's something else about the gun count, whatever it might be. Well, I think felony convictions are particularly prejudicial. The tradition in American law and dating back to common law in the 16th century, according to Professor Wigmore, rules against propensity evidence date to the 1600s. So I think prior convictions are particularly prejudicial. That has been reflected in case law dating back a long time. I'm going to reserve the rest of my time. That's fine. Yes, Mr. Rosenau. May it please the court. I'm Assistant Attorney General Scott Rosenau on behalf of the appellee. This case arises under the ADPA or AEDPA, and the parties agree that AEDPA standards apply in this case. I'd like to turn now to address Moran's joinder claim. I think it's really a severance claim, if I'm understanding what he's saying here correctly. Technically, yes. He is saying that the count should have been severed after they were joined, but just because the briefing refers to it as joinder, I'll just use that term just for convenience. The only reason I'm being picky is in the criminal rules, they are two separate stages, and you might sometimes appropriately join two different counts, and then upon reflection, you might decide that a separate trial has to take place. Maybe there's a Bruton, whatever might lead one to do that. That's correct, Your Honor, and in this case, just to be clear, the Milwaukee County Circuit Court initially did sever the charges. Right, I remember that. Because the circuit court realized, oh, a jury wouldn't find out about the prior felony conviction in a separate trial on the drug charges. And then later, the prosecutor said, well, you should reconsider that ruling because a lot of the evidence involving the guns would come in in both trials, and it would be a waste of time and resources to have all these witnesses and all this evidence be duplicated in two different trials. But, you know, the fallacy in the prosecutor's position there is to think that the evidence of the underlying guns would call to mind in the jury the idea of a felony conviction. I would say this is especially true in today's very gun-friendly environment where Wisconsin has very strong laws that protect people's right to keep and bear arms and people can open carry, they can close carry, they can do everything else. So if a jury hears that somebody's got a lot of guns, do you really think the jury's going to think, oh, well, that means you're a felon? Probably half the jury owns guns. No, Your Honor, but the idea behind the gun evidence was there was a Wisconsin Supreme Court decision from the 1980s called State versus Federal. Do you think the juries understand what a felony is, just in the abstract? I think so, Your Honor. Do you think it's common discussion amongst the public difference between a misdemeanor and a felony? I think they realize it's more serious. It's a relatively serious prior conviction. Why? What makes you think that? I just think that a lot of people watch TV shows and things like that to know what a felony is. I'd like to stop people on the street and ask them to turn up. They certainly wouldn't know who we are. I would like to discuss the severance issue a little bit. The Wedgworth decision held that evidence of possessing guns would be admissible in a trial on possessing drugs with intent to deliver because the evidence of the guns goes to the intent to deliver. Sure, and again, that's the underlying evidence. What appears to be your opponent's primary concern is that the phrase convicted of a felony is in there. If people watch CSI or if they watch whatever of the million shows they could be out there watching, maybe that makes them think that somebody's a murderer. Maybe that makes them think that somebody's a drug kingpin. Maybe that makes somebody think that they're whatever, some awful thing. If you just introduce the underlying evidence of the guns, burdensome though it may be in terms of calling witnesses, at least you get a fair shot at proving or putting on your defense to the charges in question without the burden of the felony there. That's right, Your Honor, and I suppose I have a couple of points with respect to that issue. The first point is that the Milwaukee County Circuit Court did balance these considerations, so the test under Wisconsin for severance is the potential for prejudice to the defendant, and then on the other hand is the burden to the state if there is severance. The Milwaukee County Circuit Court in this case, at two different hearings, the transcripts of which are both in the record, I believe, docket 10-16 and 10-17. They were attached to my answer. In both of those hearings, the Milwaukee County Circuit Court realized that there was this potential for prejudice if the jury learned of Mr. Moran's prior felony conviction. But once the prosecutor pointed out that it would be a huge burden on the state to have to introduce all this evidence, call all these duplicative witnesses in two trials, the Milwaukee County Circuit Court balanced that potential for prejudice to the defendant against the state's interest in having multiple trials, and the court concluded that the state's interest outweighed the potential for prejudice. And my second point really, that really raises my second point, which is Moran's claim is not that the drug evidence prejudiced the gun charges or the gun evidence prejudiced the drug charges. All three of his claims, as Attorney Mullins basically conceded a few minutes ago, all three of his claims stem from the mere fact that the jury heard twice in passing at the end of trial that the party stipulated to him having a prior felony conviction. There was no evidence of how many prior convictions he had, what those crimes were, or the underlying facts. All the jury heard was he stipulated to having a prior felony conviction. That's it. And there was a lot of evidence of his guilt. There's just simply no way that the jury found him guilty of all of these charges simply because they heard two fleeting references to a prior conviction. But more importantly, the state courts did not unreasonably apply clearly established federal law when they reached that conclusion. And I would like to make two brief points about clearly established federal law. The first point is that Moran's joinder claim rests on a footnote in the United States v. Lane where the Supreme Court said that misjoinder of charges could violate the right to a fair trial. But the problem is that footnote is not clearly established federal law. It's dictum. Other circuit courts have reached the same conclusion. In Moran's reply brief, he seems to suggest that this court and other cases like Leach have indicated that that footnote in Lane is clearly established, but they didn't. In fact, a lot of the cases that Moran relies on, I believe all of the ones that he relies on, seven circuit cases like Leach in his reply brief, all of those predated the AEBPA, which created the clearly established federal law requirement. So there's simply no way that those older Seventh Circuit cases could have even considered whether that footnote was clearly established federal law because that wasn't even a requirement under the Habeas Statute at the time. I take your point about the earlier Seventh Circuit cases. I mean, we are careful about disregarding something the Supreme Court has said on the ground that we think it's dictum because every now and then the Supreme Court decides to reverse the Court of Appeals' per curiam and say, no, we actually really mean what we've written and we want you to follow it. So those are kind of two separate points. I agree with you we should probably take a fresh look at anything that's post-AEBPA, but it is a Supreme Court decision. It's not a Seventh Circuit or any other circuit case. That's right, Your Honor. But as I pointed out in my brief, there was no constitutional issue in the Lane case. And if that footnote isn't dictum, then really nothing can be because that footnote is really the epitome of dictum, just a brief discussion, two mere sentences about an issue that wasn't even relevant to the case. And I would like to make a second point briefly about the Joyner issue. So attorney, excuse me, Morens in his reply brief seems to really back away from his reliance on Lane. So on the one hand, he seems to say that the footnote is dictum, but at the same time he seems to really back away from that position in his reply brief by broadening the scope of his Joyner claim. He says that he's not relying so much on Lane. He says that he's actually relying on other much older Supreme Court cases which simply recognize the constitutional right to a fair trial. But the problem is that AEDPA doesn't allow Morens to have such a broad claim or to rely on such broad general principles. And I think Kerry v. Musladin really reinforces that point. I cited Musladin in my brief. It's a 2006 Supreme Court case. And Musladin alleged that his right to a fair trial was violated when spectators at his trial wore buttons displaying the victim's image. And the Supreme Court said that claim did not rest on clearly established federal law under AEDPA because the Supreme Court had never held that private conduct, namely spectator conduct, could violate the right to a fair trial. The court noted that its prior decisions have recognized the right to a fair trial and its prior decisions have held that some things are so prejudicial that they violate that right, but it had never before clearly established the specific rule of law that Musladin needed which meant he couldn't get relief. The same conclusion applies here with respect to Morens' Joyner claim. The specific rule that he needs to be clearly established is that mis-Joyner of charges can violate the right to a fair trial. And he seems to recognize that he needs to cite something that specific. That's why he relies so heavily on that lame footnote in his opening brief. But as I've said, the problem is that footnote is dictum. So unless there are further questions, I ask that the district court's judgment be affirmed. Thank you. All right. Thank you. Mr. Mullins? Well, we are arguing that Mr. Morens was denied his right to a fair trial, and the right to a fair trial guaranteed by the Due Process Clause of the 5th and 14th Amendments is a general standard, but it is the Supreme Court held in Panetti v. Quarterman that a general standard may be applied in an unreasonable manner. for purposes of the AEDPA. So you read Panetti as saying that there doesn't necessarily have to have been a Supreme Court decision, say in this instance, finding that the right to a fair trial was denied by mis-Joyner. Correct. That it might be the first time. Correct. Okay. I think Lane, it is probably fair to call it dictum, the footnote that we cite, but it does provide support, persuasive authority, and as we discussed, the rule against admitting evidence of prior convictions has a long tradition. And just to address prejudice, the evidence in the case is not as strong as we believe the State is characterizing it. There were no, especially on the drug count, there were no controlled buys. There was no one who witnessed Mr. Morins with heroin or cocaine. It was all over his house. It was in that secret compartment, though, wasn't it? Well, it was a house that the defense at trial characterized as a party house. A lot of people were coming in and out. But there was a lot of evidence tying Mr. Morins to that house. There was, yes, and he didn't argue at trial that he did not live there, but that other people lived there, and no fingerprints were found on any of the drug paraphernalia. And DNA evidence was found on three of the 20 items they tested, but other people's DNA was also found. So we don't believe it was a slam dunk. Okay. Thank you very much. Thanks to both counsel. We'll take the case under advisement.